morning your honors may it please the court my name is Jonathan Byrne I'm here on behalf of James Mitchell the defendant below this court has held that the in cases involving warrantless searches the burden of proving that those searches comply with the Fourth Amendment is on the government it is not on the defendant to show that such searches did not comply with the Fourth Amendment in this case the district court erred in concluding that the government met its burden and I think that error shows up in one of either one of two ways one is sort of the best case for the government which is the information that the officers were relying on came from reliable sources or at least sources with some indicia of reliability but that information still did not suggest that there is reasonable suspicion the criminal activity was a foot the worst case for the government is that there is no evidence that the sources were reliable in which case there's also no reasonable suspicion we think the the court can rule on either grounds and vacate the district court's without conceding anything about the reliability of the sources I want to start with the reasonable suspicion analysis assuming that those sources were reliable even reliable sources have to provide police with information from which they can determine that criminal activity is afoot or have reasonable suspicion that criminal activity is afoot and the information that the we're working from here do not show that so to put this in context law has evolved to a point where to stop an individual you have to have a reasonable suspicion that criminal activity is afoot or observe it something that neighborhood and then there must be particularized facts why don't we just talk about the facts that the government contends supports that reasonable suspicion that seems like to me to be the central not only issue in this case certainly are and this this case it originated with a fight at a bar in Huntington West Virginia at closing time and police were responding to that fight and there was also information that there was a black man wearing red pants who had a gun and he was walking away from the bar he was walking down 4th well that that that that was the report that there was a man with a gun there was also someone who was on the ground someone had been assaulted on the ground and someone heard someone say there was a gun there were there was someone who was who was knocked down in the fight but there is there's no linkage between the fights and the man with the gun there was no information that the man was involved with the fight that he broke up the fight because he said hey you knuckleheads I've got a piece or anything like that that he was waving the gun around just a black man red pants with a gun walking away from the bar I'm not certain that we know what the nature of the assault was there was there was a fight at the bar at closing time that the testimony from the officers was that this is not an unusual occurrence apparently in Huntington generally but specifically at rehab be careful you got people on this panel in our court who might not like that it's on the I think the point you're talking about I mean you're at least on the call information that was received and I realize that's you know we didn't have the the bystander information later but the call said that there was a man with a gun who was that gun was noticed or seen by the person who reported the fight and that someone was knocked down or knocked out you're correct there's nothing that said they hit him with the gun but that gun was observed in connection with the report of the fight and the person being knocked down and then officer Howard when he gets there is told by a description of a black man with a black shirt red pants walking east I think on the street so that's that's the connection that the gun was reported in the same report of the fight and the person being knocked down is that correct it's correct that the initial report of the gun came out of the same report that there was a fight I don't believe it's correct that there was any that anybody saw the gun this is this is part of where we get into officer Howard's testimony which officer Howard was very upfront about the fact that he basically can't remember anything about this night and so we don't know from from the bystander whether he saw the gun whether the man said he had a gun whether two or three other people reported that the guy saw the gun so I don't think we can draw that link I don't know why maybe I was thinking of other cases that someone had seen the gun but now that you bring it up I think it did just indicate he had had I believe is the word your honor yes I guess in West Virginia a lot of folks could have a gun but well that's that's that's that's true your honor yes so if I understand your point and probably supposing out the details and we've had interesting cases that the Robertson case that dealt in which the stop itself was determined to be legal on a terror because he had a broken tail so tell light but here what the government will have to come forth with is the particularized fact that gives a basis for stopping this individual fighting if you say he was in the fight and you were coming at it is and maybe the government articulate but I guess your point is it can't just be you get you have a good but that's correct right and that he was at the scene of a fight yes because you can be a lot of people at the scene but you didn't stop him the only reason to stop this guy is he had a good he could have reported there were several other people but the question is why did you stop this particular guy correct been for the red pants I would have done it yes I think that's a good point and I'm glad you brought up Robinson because that's a situation where the defense in that case when it review conceded both of the stop itself was proper it was a traffic violation I can't remember what the traffic violation was but they also agreed that there was reasonable suspicion that the gentleman there was armed so the question there really was limited to if we know he's got a gun can we pat him down otherwise yeah they saw him with a gun in the place that but that became I wrote concurrence in that jumped all over me for saying it but it was the gun it was the big deal anybody else wouldn't mean would have anything that's true your honor yes maybe I didn't articulate that strong enough to so so your your argument seems to be because there's not specified information about how the gun was used in this incident that that's not enough is is that correct because I mean there's clearly they identify the you know mr. mitt they identify mr. Mitchell you know particularly with information and where he's going but your your position is because it neither the bystander nor the of the previous report said specifically how he was using the gun or what he was doing with it that that doesn't even satisfy the standard we have for a Terry stop correct your honor and and I think also we have to take into account that when the officers actually rolled up on mr. Mitchell they didn't report any observations that might corroborate that some criminal activity was afoot they didn't suggest that he was running away from the scene that maybe he was looking back over his shoulder that he that when he saw the police he changed direction or any anything like that and so there's just there's just nothing in his conduct that night that we know of that suggests criminal activity was afoot well I guess it's a criminal activity afoot because I threw out the thought process and I think that limits it that language that this thought process that is individuals have rights to carry guns which is that's undisputed but if you choose to carry one they at least from the expectation point of view you should expect that you're gonna be scrutinized and perhaps even stopped if you have a gun because it's a dangerous instrumentality but it's the criminal activity afoot and I guess you hang your hat on because it's nothing criminal about carrying a gun particularly if there's a concealed weapon state this involved yes your honor and I think that's where I go back to to Robinson because in that case the defense conceded that the stop itself the Robinson was a complied with the Fourth Amendment was a question of the pat-down and here we are not conceding that it's the stop itself that is the issue it is one one I'm sorry it is do you agree that the the call-in report while maybe not sufficient in and of itself can be considered as part of the totality along with the information from the bystander I think to a certain extent but I'm not sure how much weight it can be given because the officer who stopped Mr. Mitchell said he got all the information on the identity of the person with the gun and that the gun existed itself from officer Howard but all the officers including officer Howard had by virtue of the dispatch information what would something consistent with what's in the narrative on j139 correct I think that's correct your honor yes thank you we'll give you a little time and come back and thank you very much here from the government morning your honors may it please the court I'm Joseph Adams I'm appearing on behalf of the United States today your honors in this case there was a sufficient reasonable suspicion that there was criminal activity afoot and that's not based solely on the face-to-face tip that was given to officer Howard this is not a simple case of a man with a gun this court is of course seen cases in the past where it's solely a report of a man with a gun but when this court considers the totality of all the circumstances that were at it's more than a simple case such as that when you consider the totality of the circumstances the court should initially look at the call that was placed in that had officers responding to the bar in the first instance in this case there was a call from Jim Smith he he calls in and says that there was a large bar fight I would suggest that this is not even a typical bar fight does it mean a large buffet everybody is one of these things you see in the old Western place where they're just having a free fall well in the record judge you can see that there there was some specific information given that is the caller mr. Smith reported there were approximately 30 people that were involved in this bar fight so the court does have some specific information about the fight beyond that as was noted in the CAD report that was admitted below in conjunction with that report and there's a report that someone is heard saying that they have a firearm so there you have the report of a firearm and then as the courts already noted those words this had a gun didn't they say firearm I believe the the CAD report specifically says gun but there there is a report that there is a gun at the scene understand we've got a free for all fight about 30 folks fighting each other and how many people were arrested there was one defendant arrested that's the defendant in this unrelated folks involved in the fight were arrested or the record does not contain any information that there were any arrests that stemmed from the fight have this criminal activity which is this huge fight that's going on everybody's fighting about 30 folks in it nobody gets arrested but the defendant and why does the defendant get stopped well the defendant is stopped based on again the reasonable suspicion that the officers had you know that's a conclusion I want to hear the facts why was the defendant stopped you got 30 folks here all of them throwing look like I would love to seen that fight on a camera I wish I wish you would send the video up here yeah I'd like to be entertained by those old things not good but but anyway you gotta I've just seen and everything thrown all over this place cheers but you got this big fight 30 folks defended stop I understand the reasonable suspicion particular eyes that's conclusion why was he stopped the defendant judge was stopped based on the information that was given once officer Howard responded to the bar and that's the thing I want to come back yes right here not based on the information given I want to hear the information what is the fact that that caused them to stop him the tipster at the scene provided a description of the defendant it was a specific description for being black with red pants so what else did he have that's not that's not a crime so tell me what it is about the defendant that made him stop him the tipster also reported that the defendant was leaving the scene with a firearm that report of the firearm helps right there with a gun so he left he had a gun is that why you stopped that plus the totality of all the circumstances which is the initial pollution and I know I see that opinions all the time but it's nice to go out use this there's something we get away with its totality of circumstances reasonable suspicion it must be based on particularized facts and the totality of the circumstances no matter how you look at it it's an all-out fight and there's nothing wrong let me put his way if he did not have a gun would have been stopped I think in this case he yes he could have been stopped if based on the description that was provided at the scene by the bystander as well as man with red pants if he can be stopped what else anything else the information contained in the initial call the officers are responding again I'm not trying to argue I'm trying to get the facts because it's easy to say the information and a call and that's muddled that doesn't mean anything I want to know what it is he said that makes it relevant to stop this particular man because you got 30 folks in there judge the district court found that a reasonable officer could conclude that this defendant was involved in a fight and the person that provided the tip at the scene would have observed the gun so the information was that this defendant was involved in a fight or he was the fight or I thought it was a 30 person everybody fighting deal well the initial report was that it was a large fight and it did involve 30 people but again the district court found that would be reasonable for the officers responding to conclude that this defendant was also involved in that and that the person who provided this tip to officer Howard observed that gun and that's based on the face-to-face nature of the tip as well as the specifics that were provided by the tipster to officer Howard the reasonable suspicion in this case centers around this fight that's what brought the officers to the scene to begin with and the information about the gun that this is around the fight you see the reasonable suspicion centers around the fight reason suspicion of what as to this defendant when the when the call came in the call was upgraded from a simple fight to an assault victim the information that was reported to officers who were responding is that there was a victim that was knocked out laying on the ground so the officers as they're coming to the scene that's the information they have and they they are told this is a violent brawl essentially if I'm there let's say or someone's there I don't think was there any testimony that this particular individual was actually involved in the fight there is there's nothing in the record that says this defendant was expressly involved in the fight your not have been a bystander could have been is that correct he got 30 folks he probably filed arrest but he could have been right I'm not trying to be argumentative I'm just trying to find out what it is the tipster said and I don't see anything that says that this man was involved in that fight the reported information about the firearm is important in this case helps identify and link this trouble by that that that the fact that someone can carry a gun and can carry it legally well there's a bystander even if I you could have a gun and still be in the fight but it's not legal to the gun itself unless you want us to articulate something like that and a lot of folks don't like us to say that I don't know how you escape in this case this is not Robeson where there was a conceitedly lawful stop this is contesting the stop in the first instance of 30 people and that that troubles me to some extent and I can see you bother a little bit too because you got to walk a lot on this thing you can't be in a bar with a gun if you get in a fight and someone sees you walking know you got a gun you can be stopped just because you have the gun it could have been anybody is that not correct am I not articulating that right well and I could have been anybody sitting standing on you could been at having a drink someone knows you got a gun because they know you carry gun they may just know you or they could see it they can actually see you have a gun which you may have a concealed weapon for bit it's legal to hold it they tell the police police can stop you and the basis the only basis I can see he got the gun and there are a lot of folks that thinks that's a good thing but I'm not sure I'm not sure that's I don't know how you argue that I'm not sure how that goes across it for a person who has a right to carry a gun and I understand the court's concern I would submit your honor that that is not this case because you have again the information about the fight that came in don't you have also at least the implication from the call that the gun was it visible in connection with this fight it doesn't say it's not a long drawn-out deposition it's in the narrative but you have at least a interpretation of the information provided was that you have a big fight you have someone with a gun that is visible in that and then you have someone knocked out then the guy gets to the scene he's given specific information about this particular individual who is then found you know a block or so away so isn't the fact that doesn't the call about someone being seen with a gun in connection with the fight at least give a reasonable suspicion that that gun is being used in connection with the fight I would agree your honor and I would say that you sure you want to agree with that because think about what that says it says someone saw a gun and you got to really do a lot of inferring to say it's nothing that says he used the gun in and and and report it as a gun at a fight it comes so they get to the scene says that guy has a gun he can then be stopped everything is on the gun there's nothing here but gun I mean I'm and if you want us to go that way I'm just I'm just saying are you sure that's what you say because I don't see any the fight itself applies to all 30 folks there everybody there is fighting the only difference with this man he he has he's supposed to have a gun and which I'm you know I'm just having some conflicting feelings on that I mean I it was like to me maybe from a common sense yeah you should but but I'm thinking of the law on it you sure you want us to write that well and judge what I'm saying is when the initial call came in it's it's reported as a large bar fight but almost immediately the information that comes to the officers is that they have overheard that someone said they had a gun that links this gun ask you about that yes Ron someone said they had a gun and I it might be incorrect to parse a CAD report I don't know how exact the language is when people report these things but I I read it as it says advised heard someone say they had a gun so in the in the lot about 30 people involved heard someone say they had a gun I read that as I heard someone with a gun say they have a gun so I'm in a fight I hear someone else in the fight say I've got a gun is am I reading that the right way it's not that someone said they saw someone with a gun they heard someone declare I have a gun and that suggests that person is threatening or saying you know I got a gun they're in the middle of a fight saying I have a gun am I reading that right well your honor I think there are two interpretations of that statement as the district court noted at our argument that could be read that someone overheard someone say hey I have a gun it could also be read where's the language that someone says 139 the J someone said but not this defendant a specific correct your honor the initial call the initial calls that came in read advised heard someone say they had a gun and again that could be interpreted one of two ways that wasn't a tipster or was that was the tipster who said it that was the initial call Jim Smith who called in one said somebody has a gun correct your honor he didn't see it somebody says correct and that is probably a good interpretation of the information that's provided to the officers but the importance of that tip coming in in conjunction with the fight is the proximity of it that helps link the gun to the fight which differentiates this case from a simple case hey a man with a gun and again I hear someone says I'm just trying to write this opinion I'm looking at all these facts every one of them gonna go into to the opinion and anybody reading this you can try to parcel it and call it to tell it to the circumstances reasonable suspicion all you want it's gonna come down to he's got a gun correct and that's all it's gonna come down to and and you can you can dance around it all you want and and try to infer facts and bring all other stuff it's not done in other cases to that degree you cannot do that I mean there are a lot of cases that overturn these type of and my question is if this man did not have a gun would he have been stopped I would submit if the bystander comes up to officer Howard and provided different information and did not simply say he had a gun it's entirely reasonable that he could have been stopped imagine that the cab report says in the lot advised about 30 people involved advised someone was wearing red pants advised one suspect knocked out knocked out laying on the ground would they then go try to find the person wearing red pants because it suggests that that person's involved in the fight and involved with the person knocked out laying on the it would be reasonable for the officers to respond and try to find somebody without any information that the guy in the red pants was the one that knocked him down well no connection what if he says got I saw three guys one with red pants white pants and blue pants in here they were Chinese Indian and Hispanic do you go and stop all three I just saw him in the bar and this Huntington bar we've got 30 folks in their fight and by the way this is not in the record but this is a bar in which everybody's all black again your honor the record is silent to that I certainly have no knowledge that it is a judge that this if I could comment outside of the record this is a bar that's located on 4th Avenue in Huntington in an area where there's a lot of college bars and it's it's in close proximity to Marshall University so and again that information's not in the record I certainly appreciate the court's concern again outside of the record I would probably characterize it as a thing judge the and I'm going back and and maybe repeating myself at this point the the initial call that came in is really crucial in this case and it's the information that's provided about that gun that helps link this defendant to the fight when you look at the proximities in this case that call comes in officer Howard is at that bar within minutes and he almost immediately is able to relay this suspect description officer Felix described it as a suspect as it was called out to him he almost immediately is able to relay the suspect description based on information provided to him at the time so we have two separate reports of this firearm one of the reports that specifically links it to this defendant description and what the government is saying is that if you're an officer and also blacks position having the knowledge of the facts that he has it is entirely reasonable for him to conclude at that point when he sees this defendant within a minute he testified of receiving that suspect description this defendant less than a block away from the bar walking in the same direction that was reported to him it's entirely reasonable for officer black to conclude that that defendant was involved in this fight where there is a reported victim beyond that it's entirely reasonable to conclude whether he used the gun in the fight or not that he was armed and dangerous and I have the concern that how does this affect other types of cases and this is not a section 1983 case of course but when you're dealing with the clearly established problem section 1983 the opposite of it is in this case would be well from now the police officers can go in if you got a big fight in Huntington or any other place 30 folks involved you can get a tip from a guy that simply says as a guy with red pants on with a gun and you stop and you said oh it's a totality of the circumstances there was a fight but we don't have any information this guy was involved in the fight there was a guy knocked down we don't have any information this guy knocked him down it was a gun no information that a gun was used in it we can certainly try to infer we can do everything else and we say somebody said this guy had a gun but there's no information a gun was used in the fight that becomes clearly established that officers can do that so from henceforth whenever you have a fight like this going on you can stop someone with a gun I don't see how you get around it oh you just add all these other little facts in there and you're gonna have cases in it in which the facts are gonna be a little closer he was involved in the fight or and does that change it that he was involved in the fight because if you don't say the gun was involved in the fight and and and does it have to be a gun or could could it be a coca-cola bottle that's a dangerous weapon to a stick he had a stick in his hand and and and I'm wondering does it does it change it is it a gun because it's a gun or is it because he's got a lot of dangerous weapons out there that you can have and that's the troubling part of this case and I mean we will definitely grapple with it as you can see we are grappling with it judges do you have further questions I don't thank you your honor I see my time has expired the government simply is asking the court affirmed the district courts judgment thank your arms just a couple things your honor your honors the totality of the circumstances is an analytical tool it's not a magical invocation and I think this court starting with foster and several of the cases that came after have has said that we have to really scrutinize when the government in these Fourth Amendment cases all warrantless seizures and searches is trying to cobble together from from the facts reasonable suspicion that we particularly vigilant to not simply say oh well the totality of the circumstances here and use that as a way for anything to happen but we also have a standard review that makes us construe this in the light most favorable to the government here and you're certainly correct that we can't just cobble together a bunch of innocent circumstances I'm in the wall we have some law to that effect and we can't have something that you know would essentially implicate law-abiding citizens the question here is when you have a report about a fight and the report that someone saw a gun in connection with that and that someone was not doubt is those two things and that's not just cobbling stuff together that's talking to a report and then seeing a individual come up to a police officer within minutes given a description of a person that is somewhat consistent with that certainly the gun part of so I mean yeah you do I think judge when is right there there probably is some inference that needs to go on to that that the gun was displayed perhaps in some way or a reasonable suspicion that it was displayed but doesn't the law let that type of inference take place I think there needs to be more for that inference to be made and I think the crux of maybe our disagreement is that link right between the you feel like it needs to be a more explicit link to have a gun with you or at least not maybe specifically that the gun was used in the fight but that the person who had the gun was involved in the fight judge when I think it was you asked the question would there be reasonable suspicion to stop mr. Mitchell in the same circumstance if there had not been a report of the gun I think it the clear answer that is no stick that was well a pointy stick you never know all kinds of things can be can be deadly weapons that's that's true it's not just we can't we can't make it just a gun because if you just make it a gun you got a problem so I but but even though just well bond use the word in connection with you got to really read something to say in connection with all it says it's got a gun yes you used it on anything this is the most bare-bone case you could probably get on it and if we go here that it really can go a lot of places not saying we won't but I'm just saying I think that's true your gun is what this case is about I think I would agree with that and one of the one of the things I wanted to point out in talking about the fight and everything my my colleague across the aisle described mr. Mitchell as leaving the scene which has this implication like you know you rear in somebody and then back off and streak away before the cops get there the fight happens at closing time the bartender or the owner or whatever has said you don't have to go home but you can't stay here so that's what mr. Mitchell was doing again he wasn't running he wasn't making sure he wasn't followed and everything I'll just I'll conclude with with this go back to what I started off with this court has said in warrantless searches the burdens on the government to prove that the Fourth Amendment was complied with I don't think in this case the government can meet that burden and so I asked this court to reverse judge Chambers decision thank you your honor you will come down greet you and proceed to the is it okay you guys proceed to the last piece of it
judges: James A. Wynn Jr., A. Marvin Quattlebaum Jr., Allison J. Rushing